UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RENA COVA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:16-cv-469-RLW |
| | ) |
| CHARTER COMMUNICATIONS, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Compel Individual Arbitrations and to Stay Litigation (ECF No. 16). In the Motion, Defendant asks this Court to compel Plaintiffs Reno Cova, Logan O'Connor, and Zach Splaingard to arbitrate their claims on an individual basis against Charter; and stay all further proceedings in this case pending the arbitrations, including the time for Charter to answer the Complaint

### BACKGROUND

Charter and Plaintiffs Reno Cova ("Cova"), Logan O'Connor ("O'Connor"), and Zach Splaingard ("Splaingard") (collectively, "Plaintiffs") entered into a written agreement to arbitrate those "disputes and claims arising out of or relating to" the "Terms and Conditions for Charter Residential Services" (the "Agreement").

A. Cova

Cova began receiving video and internet service from Charter on or about November 25, 2005. On the front of Cova's monthly bill, dated April 17, 2013, under the caption "Charter News," Charter advised Cova that "Charter's Residential Terms and Conditions of Service have changed;

among other items, the provision regarding the arbitration of claims/disputes has been modified. The modifications shall be effective May 22, 2013."

Cova's Agreement stated, in pertinent part, "You hereby acknowledge and agree that Charter may elect to resolve all controversies, disputes, or claims or any kind arising hereunder (whether raised by you or Charter) through binding arbitration." Cova continued his service after receiving his April 17, 2013 bill.

In a monthly bill dated August 17, 2014, Cova was advised that Charter "restructured" the Residential Terms and Conditions of Service effective October 1, 2014. The notification on the bill's front page invited Cova to review the "restructured" Residential Terms and Conditions of Service by visiting charter.com/termsofservice. The "restructured" Residential Terms and Conditions contains a substantively identical arbitration agreement.

The Agreement contains a jury trial waiver and a class action waiver. Finally, the Agreement contains an opt-out provision, which provides:

> If Subscriber does not wish to be bound by these arbitration provisions, Subscriber must notify Charter in writing within 30 days of (a) the date that this arbitration provision becomes effective, if Subscriber is an existing customer, or (b) the date that Subscriber first subscribes to the Service(s). Subscriber may opt out by mail to the Arbitration Notice Address. Subscriber's written notification to Charter must include Subscriber's name, address, and Charter account number as well as a clear statement that Subscriber does not wish to resolve disputes with Charter through arbitration. Subscriber's decision to opt out of this arbitration provision will have no adverse effect on Subscriber's relationship with Charter or the delivery of Services to Subscriber by Charter.

Cova did not opt out of the arbitration provision within thirty (30) days of when it became effective. Plaintiffs assert that Cova "never provided, signed, accepted, or assented to any arbitration provision regarding his Charter services." (ECCF No. 26 at 3).

B. O'Connor

O'Connor began receiving internet service from Charter on or about July 21, 2014.

2

O'Connor's Agreement with Charter included an agreement to arbitrate stating, in pertinent part, "You hereby acknowledge and agree that Charter may elect to resolve all controversies, disputes or claims of any kind arising hereunder (whether raised by you or Charter) through binding arbitration." Later in 2014, Charter "restructured" the Residential Terms and Conditions of Service effective October 1, 2014. In O'Connor's monthly bill dated August 13, 2014, Charter notified him of this restructuring and invited him to review the "restructured" Residential Terms and Conditions of Service by visiting charter.com/termsofservice. The "restructured" Residential Terms and Conditions of Service contains a substantially identical arbitration agreement. O'Connor continued his service after that and has not canceled it. O'Connor's Agreement with Charter contained the same jury waiver, class action waiver, and opt out provisions that were quoted previously. O'Connor did not opt out of the arbitration provision within thirty (30) days of when it became effective.

Plaintiffs maintain that O'Connor is "no longer a Charter subscriber and was never provided, signed, accepted, or assented to any arbitration provision regarding his Charter services." (ECF No. 26 at 3).

C. Splaingard

Splaingard began receiving internet service from Charter on or about July 8, 2013. Splaingard's Agreement included a detailed agreement to arbitrate, which stated in pertinent part, "You hereby acknowledge and agree that Charter may elect to resolve all controversies, disputes or claims of any kind arising hereunder (whether raised by you or Charter) through binding arbitration." In a monthly bill dated August 1, 2014, Charter notified Splaingard that it would be "restructuring" the Residential Terms and Conditions of Service, effective October 1, 2014. The "restructured" Residential Terms and Conditions contained a substantively identical arbitration agreement. Splaingard thereafter continued his service to this day. The Agreement contained a jury trial waiver, class action waiver, and opt out provisions. Splaingard did not opt out of the arbitration provision within thirty (30) days when it became effective.

3

Plaintiffs assert that Splaingard continues to use Charter's services and "never signed, accepted, or assented to any arbitration provision regarding his Charter services." (ECF No. 26 at 4).

D. First Amended Complaint

Plaintiffs filed the instant lawsuit, which was removed to federal court. On April 7, 2016, Plaintiffs filed their First Amended Complaint. (ECF No. 9). Plaintiffs alleged that, since 2005, Charter advertised that it was selling or providing its services for the applicable monthly itemized rates, but that Charter's "products and services were not being offered for or provided at the total dollar rates marketed, advertised, and intended." (ECF No. 9, ¶¶10-11). In addition, Plaintiffs alleged that Charter "failed to disclose that Defendant would be selling or providing for other valuable consideration, Defendant's subscribers' personal identifiable information, specifically names, addresses, and other subscriber information such as retail subscription packages/channels, to third parties unknown to the subscribers and known to Defendant." (ECF No. 9, ¶12). Plaintiffs allege three alternative claims in Complaint: initial violation of the 47 U.S.C. §551(a)(1) for failure to deliver initial notifications (Count I), subsequent violation of 47 U.S.C. §551(a)(1) for failure to deliver yearly notifications (Count II), and violations of 47 U.S.C. §551(a)(1)(A)-(E) for failure to clearly and conspicuously disclose information (Count III). Plaintiffs entitle their latest pleading as the "First Amended Class Action Complaint" and purport to bring this action on behalf of "themselves and all others similarly situated."

## DISCUSSION

At issue in this case is whether the parties entered into a valid agreement to arbitrate under the Federal Arbitration Act (FAA). Second, the Court must determine whether this dispute falls under the coverage of the arbitration agreement.

### I. Valid Arbitration Agreement

Charter asserts that there is a valid arbitration agreement and that the agreement is supported by the strong state and federal policy in favor of arbitration. (ECF No. 17). Plaintiffs, in turn, assert that there is no agreement to arbitrate enforceable under the FAA. (ECF No. 26 at 2).

Under the FAA, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 reflects congressional intent "to overcome judicial hostility to arbitration agreements." *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 272, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). But it also "gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision," if the contract violates state law. *Id.* at 281, 115 S.Ct. 834. "What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." *Id.* Doubts are resolved in favor of arbitrability. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "But general contract defenses, such as unconscionability, 'may be applied to invalidate arbitration agreements without contravening § 2.'" *Cicle v. Chase Bank USA,* 583 F.3d 549, 553–54 (8th Cir. 2009)(citing *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).

The validity of an arbitration agreement is determined by state contract law. *E.E.O.C. v. Woodmen of World Life Ins. Soc.,* 479 F.3d 561, 565 (8th Cir.2007). Under Missouri law, the basic elements of a contract are offer, acceptance of that offer, and consideration to support the contract. *Karzon v. AT & T, Inc.,* No. 4:13-CV-2202 CEJ, 2014 WL 51331, at *2 (E.D. Mo. Jan. 7, 2014) (citing *Citibank (S.Dakota), N.A. v.. Wilson,* 160 S.W.3d 810, 813 (Mo. Ct. App. 2005)).

5

The Court holds that all of the elements of a contract are present to support the validity of the arbitration agreement. The Complaint alleges that Plaintiffs received services from Charter pursuant to a written agreement. Charter provided evidence that it notified Cova, O'Connor, and Splaingard that the terms and conditions would be changed by an effective date. Charter provided the new terms and conditions to the Plaintiffs. These restructured terms and conditions stated:

> If Subscriber does not wish to be bound by these arbitration provisions, Subscriber must notify Charter in writing within 30 days of (a) the date that this arbitration provision becomes effective, if Subscriber is an existing customer, or (b) the date that Subscriber first subscribes to the Service(s). Subscriber may opt out by mail to the Arbitration Notice Address. Subscriber's written notification to Charter must include Subscriber's name, address, and Charter account number as well as a clear statement that Subscriber does not wish to resolve disputes with Charter through arbitration. Subscriber's decision to opt out of this arbitration provision will have no adverse effect on Subscriber's relationship with Charter or the delivery of Services to Subscriber by Charter.

Neither Cova, O'Connor, nor Splaingard opted-out within thirty (30) days.

Plaintiffs argue that an express agreement to arbitration was not offered to Plaintiff nor did Plaintiffs accept these offers. (ECF No. 26 at 10). Plaintiffs notes that Charter never provided any arbitration provision to them in-person, by mail, or by email. (ECF No. 26 at 10). Plaintiffs claim that Charter's "unilaterally published statements" did not constitute valid offers. (ECF No 26 at 10 (citing *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. 1988); *Hobbs v. Tamko Bldg. Prod., Inc.*, 479 S.W.3d 147, 148-50 (Mo. Ct. App. 2015)). Plaintiffs cite *Hobbs* for the proposition that the "mere acceptance of and payment for goods does not constitute acceptance of all the terms in a seller's proposed term sheet, and would not create a contract that includes an arbitration agreement." (ECF No. 26 at 10-11 (citing *Hobbs*, 479 S.W. 3d at 149). Likewise, Plaintiffs assert that "there has to be more than continuing

6

payment on the part of a consumer to constitute bargained-for consideration." (ECF No. 26 at 11 (citing *Hobbs*, 479 S.W. 3d at 149)). Plaintiffs state that Charter has not provided any signatures evidencing Plaintiffs' acceptance of any arbitration agreement and has not presented "other evidence establishing Plaintiffs assented to abide by the terms of any arbitration agreement." (ECF No. 26 at 12). Plaintiffs contend that it is not sufficient acceptance of the terms of the agreement for them to have not opted-out within thirty (30) days. Plaintiffs further argue that there was no consideration for the addition of the arbitration provision and they were not provided with any documents which modified the terms of their Agreement. (ECF No. 26 at 13-14).

Despite Plaintiffs' concerns, the Court holds that the parties have entered into a valid and enforceable contract with an arbitration provision. Plaintiffs admit that they received services from Charter pursuant to a written agreement. (ECF No. 9, ¶¶22, 27). The contract clearly governed Plaintiffs' agreement with Charter with respect to their use of Charter's services, the cost, and related terms. Essentially, Plaintiffs are asking this Court to hold that the "contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause." *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 281, 115 S. Ct. 834, 843, 130 L. Ed. 2d 753 (1995). The Court, however, holds that all of the elements of a valid contract under Missouri law are present. *Karzon*, 2014 WL 51331, at *2 (citing *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007) ("The validity of an arbitration agreement is determined by state contract law."). Under Missouri law, the basic elements of a contract are offer, acceptance of that offer, and consideration to support the contract. *Citibank (S.Dakota), N.A.*, 160 S.W.3d at 813. In a similar case, the Court has held that a formal agreement, signed by both parties, is not required for a valid a contract:

> Missouri contract law does not require acceptance of an offer to be made "by spoken or written word." *[Citibank (S.Dakota), N.A.,* 160 S.W.3d at 813] (citation omitted). "An offer may, instead, be accepted by the offeree's conduct or failure to act." *Id.* Here, plaintiff was provided with ample notice of his right to opt out, the means by which to do so, and the date by which he was required to exercise his right to do so. By failing to opt out, he affirmatively accepted the arbitration agreement. *See Cicle v. Chase Bank USA,* 583 F.3d 549, 555 (8th Cir.2009) (arbitration agreement that was deemed accepted by failure to opt out not unconscionable under Missouri law).

*Karzon*, 2014 WL 51331, at *2.

The Court notes that the bill clearly directs Plaintiffs to Charter's website, which provides the revised language of the terms and conditions, including the arbitration provision. Charter provided billing statements, which constitute written offers. Plaintiffs never assert that that did not receive monthly bills from Charter. Thus, they received the offer. Further, under modern contractual agreements, the Court holds that Plaintiffs accepted Charter's offer by continuing to receive services from Charter. *Karzon*, 2014 WL 51331, at *2 (quoting *Citibank (S.Dakota), N.A.,* 160 S.W.3d at 813 ("An offer may, instead, be accepted by the offeree's conduct or failure to act." ); *Cicle*, 583 F.3d at 555 ("These sorts of take-it-or-leave-it agreements between businesses and consumers are used all the time in today's business world. If they were all deemed to be unconscionable and unenforceable contracts of adhesion, or if individual negotiation were required to make them enforceable, much of commerce would screech to a halt."). As discussed, Charter gave Plaintiffs notice that the terms and conditions of their contract with Charter would be changed by an effective date and directed Plaintiffs to the location where those restructured terms were stated. Charter also gave Plaintiffs an opportunity to opt out of the arbitration provision, but Plaintiffs did not do so. Thus, the Court holds that Plaintiffs accepted the revised contractual terms, including the arbitration provisions, by continuing their service with Charter. Finally, the Court holds that the agreement between the parties is supported by consideration. The arbitration provision states that "Charter and

8

Subscriber agrees to arbitrate disputes and claims arising out of or relating to this Agreement, the Services or marketing of the Services Subscriber has received from Charter." (ECF No. 17-6). The arbitration agreement is mutual and requires Charter to submit disputes to arbitration (with a few exceptions), and requires Charter to submit any defenses to a subscriber's claims to arbitration. *See Credit Acceptance Corp. v. Niemeier*, No. 4:15-CV-555-CEJ, 2015 WL 4207122, at *3 (E.D. Mo. July 10, 2015)("[T]he agreement explicitly states that either party can compel arbitration when there is a 'dispute.' Thus both parties are giving up something (their right to come to court) if either party invokes the arbitration agreement in a 'dispute.' That is mutual consideration."). Moreover, contrary to Plaintiffs' representations, Charter could not changes the terms and conditions without notice, retroactively and unilaterally. Rather, the agreement provides that Charter would provide advanced notice of any changes and that the subscriber's continued use of the service after notice of the change would constitute acceptance of change.

Plaintiffs cite this Court to *Campbell v. Adecco USA, Inc.*, No. 2:16-CV-04059-NKL, 2016 WL 3248579 (W.D. Mo. June 13, 2016) as supplemental authority to support their claim that there was not a valid and enforceable arbitration agreement. *See* ECF No. 31-1. However, the Court finds that the *Campbell* decision is inapposite to the legal question before the Court. The Court notes that the Campbell contract was a contract for employment-at-will, not for goods or services as in the instant case. At-will employment contracts are different because "the promise of at-will employment, standing alone, is insufficient consideration to support an arbitration agreement signed by an employee." *Leonard v. Delaware N. Companies Sport Serv., Inc.*, No. 4:15 CV 1356 CDP, 2016 WL 3667979, at *5 (E.D. Mo. July 11, 2016).

9

In sum, the Court holds that there was valid Agreement and an enforceable arbitration provision.

## II.     Dispute Falls Within Arbitration Agreement

Plaintiffs also argue that Defendant has failed to establish that Plaintiffs' disputes fall within the scope of any arbitration provision. (ECF No. 26 at 16-19). As stated, 9 U.S.C. §2 provides for enforcement of arbitration agreements only when they encompass controversies "arising out of such contract or transaction." Plaintiffs note that their cause of action arises out of a federal statute that mandates Charter to provide a separate, written privacy policy to Plaintiffs at the inception of their services and annually thereafter. (ECF No. 26 at 16 (citing 47 U.S.C. §551(a)(1)). Plaintiffs attached Charter's Residential Subscriber Privacy Policy (ECF No. 9-1) and Charter's Commercial Subscriber Privacy Policy (ECF No. 9-2) to the Amended Complaint. Plaintiffs assert that their First Amendment Right of Privacy and Publicity were violated and said violations do not "arise out of" ECF Nos. 17-3, 17-6. (ECF No. 26 at 16). "Plaintiffs' cause of action arises out of a federal statute which mandates Charter to provide a *separate*, written privacy policy to Plaintiffs at the inception of their services and annually thereafter." (ECF No. 26 at 16 (citing 47 U.S.C. §551(a)(1)). Plaintiffs contend that because 47 U.S.C. §551 "provides for suit in a United States district court and Defendant's privacy policy provides for a civil action under federal law, Plaintiffs have filed their suit in this Court and are entitled to this day in court." (ECF No. 26 at 17-18).

Plaintiffs further argue that Defendant's privacy policy is outside the scope of the arbitration provision. (ECF No. 26 at 18-19). Plaintiffs maintain that no document provided to them incorporates all of the terms of a privacy policy. Plaintiffs argue that "[s]ince no privacy policy meeting the requirements of 47 U.S.C. §551 is incorporated into any document containing

10

an arbitration provision, there has been no valid agreement to arbitrate disputes for violations of 47 U.S.C. §551[.]" (ECF No. 26 at 19).

The Court holds that the broad arbitration provision in this case covers this dispute. The arbitration provision provides:

> Subject to the "Exclusions" paragraph below, Charter and Subscriber agrees to arbitrate disputes and claims arising out of or relating to this Agreement, the Services or marketing of the Services Subscriber has received from Charter. Notwithstanding the foregoing, either party may bring an individual action on any matter or subject in small claims court.
>
> THIS AGREEMENT MEMORIALIZES A TRANSACTION IN THE INTERSTATE COMMERCE. THE FEDERAL ARBITRATION ACT GOVERNS THE INTERPRETATION AND ENFORCEMENT OF THESE ARBITRATION PROVISIONS.

(ECF No. 17-6 at 7). The agreement provides for 3 exclusions: (i) small claims; (ii) disputes over intellectual property rights; and (iii) disputes associated with unauthorized use or receipt of service. Given the extremely broad language in the arbitration agreement, all other disputes between Plaintiffs and Charter relating to the agreement or services are subject to the arbitration agreement. *See Solis v. AT & T Mobility LLC*, No. 4:15-CV-1343-RLW, 2015 WL 6739141, at *2 (E.D. Mo. Nov. 3, 2015) (compelling arbitration where agreement required arbitration of "all disputes and claims between us"); *Chisholm v. Career Educ. Corp.*, No. 411-CV-0994HEA, 2011 WL 5524552, at *2 (E.D. Mo. Nov. 14, 2011) ("broad phraseology of the arbitration provision" included the claims at issue). The Court further notes that another district court judge in another circuit has already enforced this arbitration provision. *See Hartman v. Charter Commc'ns, Inc.*, No. 1:14-CV-00243-MR-DLH, 2015 WL 1756437, at *3 (W.D.N.C. Apr. 17, 2015) ("the arbitration provision is enforceable by this Court"). Further, the Court holds that the privacy policy at issue arises out of or relates to the arbitration agreement, the services, or

marketing of Charter's services. The Agreement states, "Charter will provide Subscriber with a copy of its customer privacy policy at the time Charter provides Service to Subscriber, and annually afterwards, or as otherwise required by law." (ECF No. 17-6 at 6).

Contrary to Plaintiffs' arguments, the Court holds that claims under the Cable Communications Policy Act, 47 U.S.C. §551, are subject to Arbitration. Charter's Privacy Policy provides, "You may enforce the limitations imposed on us by federal law with respect to the collection and disclosure of personally identifiable subscriber information about You, through a civil action under federal law, in addition to other rights and remedies that may be available to You under federal or other applicable laws." (ECF No. 9-1 at 9). The Court finds that Plaintiffs' claims under this Policy are subject to arbitration for several reasons. First, the privacy policy's clause informs the subscriber that he "may" bring a lawsuit; it is neither mandatory nor exclusive and it denotes that "other rights and remedies may be available." Arbitration likely qualifies as another remedy. Second, "the Court finds it significant that the Cable Act requires a cable provider to include notice about a subscriber's rights under 47 U.S.C. § 551(f) to bring a lawsuit. *See* 47 U.S.C. § 551(a) (1)(E)." *Hodsdon v. Bright House Networks, LLC*, No. 1:12-CV-1580 AWI JLT, 2013 WL 1499486, at *1 (E.D. Cal. Apr. 11, 2013). That is, a provider must tell a subscriber about his ability to bring a lawsuit under the Cable Communications Policy Act. Third, the arbitration clause is quite broad. Fourth, Plaintiffs cite to nothing in the 47 U.S.C. §551 exempting it from the reach of the FAA. *See Hodsdon*, 2013 WL 1499486, at *1 (applying all of these factors to a similar policy provision and holding that privacy claims were subject to arbitration);[1] *see also Bayer v. Comcast Cable Commc'ns, LLC*,

---

[1] *See Hodsdon*, *2:
> Given the permissive and "non-exclusive" language of the privacy policy clause, the Cable Act's requirement that a cable subscriber be informed of 47 U.S.C. §

No. 12 C 8618, 2013 WL 1849519, at *3-*4 (N.D. Ill. May 1, 2013). In sum, the Court holds that the agreement to arbitrate is enforceable based upon the broad arbitration provision and because it is not contradicted by federal statutory law or the privacy policy. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89, 121 S. Ct. 513, 521, 148 L. Ed. 2d 373 (2000) ("[W]e have recognized that federal statutory claims can be appropriately resolved through arbitration, and we have enforced agreements to arbitrate that involve such claims[.]").

### III. Unconscionability

Plaintiffs argue that Defendant's arbitration clause is unconscionable and should be severed from the contract. (ECF No. 26 at 19-29). Plaintiffs contend that Charter's arbitration clauses are procedurally unconscionable because they included non-negotiable terms and one-sided language. Plaintiffs maintain that Charter's arbitration provisions are substantively unconscionable because the terms are objectively unreasonable. Plaintiffs argue that, under the arbitration agreements, "Charter possesses the sole ability to choose whether or not a dispute is heard in court, but also reserves for itself the sole ability to choose the court in which the dispute is heard, the sole ability to choose an arbiter, and the sole ability to seek injunctive relief

---

551(f)'s lawsuit provision, and the broad arbitration clause in this case, it is not at all apparent that the parties intended to exclude Cable Act claims from arbitration. Cf. [*AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 657, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)]; [*Standard Concrete Prod. Inc. v. Gen. Truck Drivers, Office, Food & Warehouse Union, Local 952*, 353 F.3d 668, 674-75 (9th Cir. 2003)]. Because there is a presumption in favor of arbitration, the Court is required to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284–85 (9th Cir.2009). Therefore, the Court resolves any doubt it may have in this case in favor arbitration. *See AT & T Techs.*, 475 U.S. at 657; *Comedy Club*, 553 F.3d at 1284–86.

notwithstanding any part of the terms of the arbitration which entirely binds subscribers." (ECF No. 26 at 25). Plaintiffs note that, under the arbitration provisions, a consumer waives all rights to pursue a claim against Charter outside of the arbitration system "chosen and dominated by Charter's own preferences." (ECF No. 26 at 26). Plaintiffs further claim that Charter's opt-out provision is difficult to understand, particularly since the opt-out provision does not state whether it is to opt-out of the entire arbitration provision, the class action waiver, or the entire contract. Plaintiffs argue that the opt-out provision requires the subscriber to mail written notice to Charter's "Associate General Counsel, Litigation," yet Charter argues that it was sufficient to bind subscribers with a "casual mention in a 'News' section of a bill that typically contains no information regarding subscribers' substantive rights." (ECF No. 26 at 26-27). Plaintiffs contend that the arbitration is unconscionable because Charter retains the ability to discard arbitration in favor of litigation against its subscribers when it wishes. (ECF No. 26 at 27). Finally, Plaintiffs assert that the arbitration provisions are unconscionable because they are difficult for the average consumer to understand. (ECF No. 26 at 27).

The Court is unpersuaded by Plaintiff's position that the Arbitration Clause is unconscionable. The Court first notes that courts no longer address unconscionability through the dichotomy of procedural and substantive unconscionability. *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 492 n.3 (Mo. 2012) (en banc) (internal citations omitted); *see also Torres v. Simpatico, Inc.*, 781 F.3d 963, 968-69 (8th Cir. 2015); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *PR Grp., LLC v. Windmill Int'l, Ltd.*, No. 14-0401-CV-W-BP, 2016 WL 3033617, at *3 (W.D. Mo. Feb. 1, 2016). Rather, "[f]actors to be considered include whether the arbitration agreement was non-negotiable, whether the arbitration agreement's terms are clear or confusing, whether one party or the other was in a superior bargaining position, whether the arbitration

14

agreement is one-sided, and whether the arbitration agreement is structured in a way to make arbitration cost-prohibitive." *PR Grp., LLC*, 2016 WL 3033617, at *3. The Court holds that these factors do not weigh in favor of a finding of unconscionability. First, the contract was negotiable because Plaintiffs were given the option of opting out of the arbitration provision. Second, the cost of arbitration is not prohibitively high because the arbitration provision requires Charter to pay certain filing fees and arbitrator fees for claims up to $75,000. (ECF No. 17-6 at 8). Plaintiffs do not identify any high-pressure sales tactics or duress, nor do Plaintiffs object to the AAA or applicable rules. Plaintiffs also do not claim that they did not understand the contract, particularly because at least one of them is a lawyer. Plaintiffs' mere failure to read the contract does not make it voidable for unconscionability. Finally, the Court holds that Plaintiffs have presented no evidence of a disparity in bargaining power, other than those normally present in every contract between a corporation and an individual. The Court further emphasizes that the arbitration agreement does not limit Plaintiffs only to arbitration. Rather, it affords them the opportunity to pursue claims in small claims court. "Additionally, Plaintiff's position that the limitation of remedies provision makes the entire provision unconscionable also fails. The validity of provisions such as this is to be determined by the arbitrator." *Chisholm v. Career Educ. Corp.*, No. 411-CV-0994HEA, 2011 WL 5524552, at *2 (E.D. Mo. Nov. 14, 2011) (citing *Homestake Mining Co. V. United Steelworkers of Am.* 153 F.3d 678, 680 (8th Cir. 1998)). In a similar vein, Charter has eliminated the financial disincentive to bring small claims by specifying its arbitration provision that it will pay the filing fees and arbitrator fees for claims up to $75,000. (ECF No. 7-6 at 7). *See Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 878 (11th Cir. 2005); *Chisholm v. Career Educ. Corp.*, No. 411-CV-0994HEA, 2011 WL 5524552, at *2 (E.D. Mo. Nov. 14, 2011) (citing *Faber v. Menard*, 367 F.3d 1048, 154 (8th Cir.

2004) ("Plaintiff has failed to present 'specific evidence of likely arbitrator's fees and [her] financial ability to pay those fees.'").

For these reasons, the Court holds that the Agreement, including the arbitration agreement, was not unconscionable and will be enforced.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Individual Arbitrations and to Stay Litigation (ECF No. 16) is **GRANTED**. This case is **STAYED** until such time as the parties complete the individual arbitrations. The parties shall notify the Court within ten (10) days of completing arbitration.

**IT IS FURTHER ORDERED** that, in light of the stay, all other pending motions are **DENIED without prejudice** to refiling, as appropriate, upon lifting of the stay.

**IT IS FINALLY ORDERED** that this case shall be deemed closed for statistical purposes only, subject to reopening upon lifting of the stay herein imposed or other appropriate Order.

Dated this 17th day of February, 2017.

*Ronnie L. White*
RONNIE WHITE
UNITED STATES DISTRICT JUDGE